### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

**PROCESS PIPE FABRICATORS, INC.,**

Debtor.

**Filed / Docketed**
**May 1, 2009**

**Case No. 06-10536-M**
**Chapter 11**

### MEMORANDUM OPINION

THIS MATTER comes before the Court pursuant to the Debtor's Second Amended Objection to Claim of the Department of the Treasury–Internal Revenue Service, Claim No. 7, as Amended.[1]  Process Pipe Fabricators, Inc. ("Debtor"), acting as debtor-in-possession, objects to Claim No. 7-8, as amended on October 15, 2008, filed by the United States on behalf of the Internal Revenue Service ("IRS").  For the reasons set forth below, the Debtor's objection is overruled.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334(b).[2]  Reference to the Court of this bankruptcy case is proper pursuant to 28 U.S.C.A. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(B).

### Findings of Fact

Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on May 8, 2006.  Debtor continues to manage its property as debtor-in-possession, although active operations of the business have ceased.  No trustee, examiner, or official committee has been appointed.

---

[1]  *Docket No. 196.*

[2]  Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2009).  All other references to federal statutes and rules are also to West 2009 publications.

1.  *The Gastech Judgment*

Debtor was an Oklahoma corporation that assembled gas transmission units for offshore and onshore gas transmission facilities.[3]  Beginning in 1992, Debtor developed a business relationship with Gastech Engineering Corporation ("Gastech").   From 1992 to 1994, Debtor entered subcontracts with Gastech in which Debtor agreed to fabricate transmission equipment for Gastech's clients. The parties agreed that the clients would pay Gastech directly and Gastech agreed to reimburse Debtor for its work.  The agreement did not operate as the parties intended, and Gastech frequently neglected to pay Debtor in a timely manner.  Debtor's financial situation deteriorated to the point that it was forced to seek Chapter 11 bankruptcy protection from its creditors in 1994,[4] largely because Debtor was unable to collect invoices owed by Gastech.  In addition, Debtor did not pay federal employment taxes from March 31, 1992, to March 21, 1996.  By March 1996, Debtor owed $354,520 in unpaid federal employment taxes, interest, and penalties (the "Assessment").

Between July 20 and November 11, 1996, Debtor submitted six invoices to Gastech totaling $256,641 (the "Gastech Invoices").   Gastech did not pay any part of those invoices.   After representatives from Debtor met with the IRS to discuss payment of Debtor's tax liability, Debtor agreed to permit the IRS to seize sufficient accounts receivable to pay its tax deficiency.  On August 16, 1996, October 23, 1996, and April 15, 1999, the IRS served Gastech with notices of levy on all

_____

[3]  This section relies heavily on two sources:  1) facts as they were determined in a decision of the United States District Court for the Northern District of Oklahoma, in *Process Pipe Fabricators, Inc. v. United States*, Case No. 04-CV-00869-CVE-SAJ, 2007 WL 1731765, at *1–4 (N.D. Okla. June 14, 2007), *in* Stipulation of Facts, Exhibit "F", *Docket No. 221-6*; and 2) the Stipulation of Facts, *Docket No. 221.*

[4]  *Case No. 94-01233-R.* A plan was confirmed in that case on August 10, 1995, and the case was closed on September 24, 1997.

property or rights to property of Debtor, including the Gastech Invoices.  Debtor did not assign its right to payment from Gastech to the IRS.

Gastech proceeded to make nominal payments to the IRS in response to the levies. Unsatisfied, the IRS, using its authority under I.R.C. §§ 7401 and 7402(a),[5] filed suit against Gastech pursuant to I.R.C. § 6332(d)(1) alleging failure to honor the levies and seeking a judgment of personal liability for the face value of the Gastech Invoices (the "Gastech Litigation").[6]  The issue before the court was whether Gastech was liable to Debtor for the full face value of the Gastech Invoices, and thus whether the invoices represented property of Debtor that were the proper targets of the IRS levy.[7]  On March 6, 2001, the court entered a judgment against Gastech (the "Gastech Judgment"), which read in its entirety:

> In this action to enforce a levy brought by the United States pursuant to 26 U.S.C. §§6332(d)(1) and 7402(a), for the reasons set forth in the Court's order dated January 25, 2001, judgment is entered in favor of the United States of America, Plaintiff, and against Gas[t]ech Engineering Corporation, Defendant, in the amount of $309,112.64 plus costs.  This amount includes accrued interest and payments through February 28, 2001.  Interest continues to accrue after February 28, 2001, at the underpayment rate established by 26 U.S.C. § 6621 pursuant to 26 U.S.C. § 6332(d)(1).[8]

---

[5] References to Title 26 of the United States Code will be cited as I.R.C., to clarify reference to the Internal Revenue Code.

[6] *United States v. GasTech Eng'g Corp.*, Case No. 99-CV-0026-JOE (N.D. Okla. filed Jan. 1, 1999).  The Amended Complaint filed in that case incorrectly refers to section 7403 of the I.R.C. as the source of its authority to file the suit.  *See* Amended Complaint, *in* Stipulated Facts, Exhibit "B", *Docket No. 221-2.*  The court corrected this error by noting in its Judgment that the IRS's authority to file a suit under I.R.C. § 6332(d)(1) stems from I.R.C. § 7402(a).  *See* Judgment, *in* Stipulated Facts, Exhibit "D", *Docket No. 221-4.*

[7] Order, *in* Stipulated Facts, Exhibit "C", *Docket No. 221-3.*

[8] Judgment, *in* Stipulated Facts, Exhibit "D", *Docket No. 221-4.*

3

The Gastech Judgment gave the IRS a judgment lien against Gastech.[9]   Gastech appealed the decision.

While the appeal was pending, Gastech and the IRS entered into a settlement agreement (the "Settlement Agreement").[10]   The Settlement Agreement required Gastech to pay the IRS $167,000 plus interest, with an initial installment of $15,000 upon execution of the Settlement Agreement, followed by monthly payments over the next 72 months.   Among the terms of the Settlement Agreement, it was recited that the "[l]itigation pertain[ed] to the enforcement of levies served upon Gas[t]ech for amounts claimed by the United States as being due and owing by Gas[t]ech to [Debtor]."[11]   The Settlement Agreement settled "all matters pertaining to the dispute identified in the pleadings in the Litigation."[12]   Under its terms, Gastech dismissed its appeal and became liable for the full amount of the Gastech Judgment, which was $309,112.64 as of February 28, 2001, plus interest, which was final and non-appealable.[13]   The IRS agreed that upon the receipt of the $167,000 plus interest paid under the terms of the Settlement Agreement, it would accept that amount in full accord and satisfaction of Gastech's liability to the IRS and would file a "Release and Satisfaction of Judgment" with the district court.[14]   At no time did the IRS consult with, discuss, or seek approval from Debtor prior to entering into the Settlement Agreement with Gastech.   Gastech made payments

---

[9] *See* Terms of Settlement, *in* Stipulated Facts, Exhibit "E", *Docket No. 221-5* at 4.  *See also* 28 U.S.C. § 3201 (Judgment Liens).

[10] Terms of Settlement, *in* Stipulated Facts, Exhibit "E", *Docket No. 221-5.*

[11] *Id.* at 1.

[12] *Id.*

[13] *Id.* at 2.

[14] *Id.* at 2, 4.

4

pursuant to the Settlement Agreement from March 28, 2002, to March 19, 2007.

Between May 6, 2004, and November 9, 2004, Debtor remitted checks to the IRS, and the IRS collected funds from other sources related to Debtor in an amount to satisfy all taxes, penalties, and interest associated with the Assessment.  As of November 10, 2004, Debtor's liability to the IRS that was the basis of the Gastech Judgment had been satisfied.  Notwithstanding this fact, pursuant to the Settlement Agreement Gastech made five additional payments to the IRS of $3,068.44 each on November 16, 2004, October 2, 2006, March 5, 2007, March 16, 2007, and March 19, 2007.[15] Those funds were applied to other outstanding tax liabilities of Debtor and of Process Mechanical LLC.[16]  None of these payments were returned to Gastech.

## 2.  *The Overpayment Litigation*

On November 10, 2004, Debtor filed six claims with the IRS requesting a refund of all amounts that it believed it had overpaid for periods between December 31, 1993, and September 30, 1996, including overpayments for taxes, penalties, and interest covered by the Assessment.  The IRS did not grant any of the requested refunds.  On November 15, 2004, Process Pipe filed a complaint against the United States in the United States District Court for the Northern District of Oklahoma ("District Court") seeking recovery of an alleged overpayment in the amount of $33,750, plus costs and statutory accruals, said amount representing federal employment tax, penalty, and interest paid

---

[15]  The issue before the Court is whether Debtor is entitled to a setoff of the IRS's tax claim. As discussed *infra*, payments received by the IRS after the petition date in this case are property of Debtor's estate.  The Court has been advised that any issues related to IRS retention or application of post-petition payments from Gastech have been resolved, and that Debtor's entitlement to a setoff based on the alleged mishandling of the Gastech Judgment is the only remaining issue between Debtor and the IRS.

[16]  Debtor refers to Process Mechanical LLC as a "sister company."  *See* Debtor's Brief, *Docket No. 235* at 8.

for the calendar quarter ending March 31, 1996.[17]  On June 2, 2005, Debtor filed a second complaint in the District Court for the recovery of an alleged overpayment in the amount of $351,073.75, plus costs and statutory accruals, said amount representing federal employment taxes, penalties, and interest paid for the calendar quarters ending December 31, 1993; March 31, 1994; June 30, 1994; December 31, 1994; June 30, 1996; and September 30, 1996.[18]  The two actions were eventually consolidated (referred to collectively as the "Overpayment Litigation").[19]  In the consolidated action, Debtor requested a refund of amounts paid, alleging that the federal employment taxes, penalties, and interest for all of the calendar quarters noted above were erroneously and illegally assessed against and collected from Debtor.  Debtor further asserted that the denial of its claims for refund was arbitrary, factually unsupported, and without basis in law for the reason that the IRS was negligent in accepting a settlement of $167,000 from Gastech, and that Debtor should be credited with the full value of the Gastech Judgment.

Four opinions were entered in the Overpayment Litigation.  First, in response to a motion to dismiss by the United States, the District Court ruled that Debtor had fully paid its taxes and had sufficiently stated a claim for a tax refund.[20]  Second, following the rule established by the United

_____

[17]  *See Process Pipe Fabricators, Inc. v. United States*, Case No. 04-CV-00869-CVE-SAJ (N.D. Okla. filed Nov. 15, 2004).

[18]  *See Process Pipe Fabricators, Inc. v. United States*, Case No. 05-CV-00304-CVE-FHM (N.D. Okla. filed June 2, 2005).

[19]  Consolidated as *Process Pipe*, Case No. 04-CV-00869-CVE-SAJ (N.D. Okla.).

[20]  The Court takes judicial notice of the Opinion and Order in *Process Pipe*, Case No. 04-CV-00869-CVE-SAJ, 2006 WL 2265510 (N.D. Okla. Aug. 7, 2006) (denying the United States' Motion to Dismiss, finding that Debtor had properly stated a claim for a tax refund). *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (scope of judicial notice).

States Court of Appeals for the Ninth Circuit in *Stead v. United States*,[21] the District Court found that ownership of the Gastech Invoices did not transfer to the IRS upon issuance of the notices of levy, and that Debtor was not entitled to a credit against its tax obligations for the full face value of the Gastech Invoices.[22]  Third, the District Court ruled that the controlling issue in the case was the value of the Gastech Invoices in the hands of the IRS, and whether the IRS had acted reasonably when it accepted a settlement far below the amount of the Gastech Judgment.[23]  Finally, the District Court granted summary judgment in favor of the IRS, finding that the IRS did not bear the risk of loss of value of the Gastech receivables when it did not immediately move to enforce or collect the Gastech Invoices, and that the IRS's decision to settle the appeal of the Gastech Judgment was reasonable.[24]  The District Court concluded that Debtor could not prevail on its claim for a tax refund.

Upon the conclusion of the Overpayment Litigation and after the initiation of Debtor's

---

[21]  419 F.3d 944 (9th Cir. 2005).

[22]  The Court takes judicial notice of the Opinion and Order in *Process Pipe*, Case No. 04-CV-00869-CVE-SAJ, 2006 WL 2708609, at *5 (N.D. Okla. Sept. 20, 2006) (denying Debtor's Motion for Summary Judgment, finding a genuine issue of material fact remained) (Citing *Stead*, 419 F.3d at 948–49, the court found that "[a] levy does not transfer ownership of property to the IRS unless it sells the property in a tax sale or disposes of the asset in some other way. . . . [T]he IRS must attempt to collect on the levied property and must engage in affirmative negligence that would justify shifting the risk of loss.").

[23]  The Court takes judicial notice of the Opinion and Order in *Process Pipe*, Case No. 04-CV-00869-CVE-SAJ, 2006 WL 3378049 (N.D. Okla. Oct. 24, 2006) (denying the United States' Cross-Motion for Summary Judgment, finding a genuine issue of material fact remained).

[24]  Order and Opinion, *in* Stipulation of Facts, Exhibit "F", *Docket No. 221-6*, also available at *Process Pipe*, Case No. 04-CV-00869-CVE-SAJ, 2007 WL 1731765 (N.D. Okla. June 14, 2007) (granting the United States' Second Motion for Summary Judgment, denying the Debtor's Second Motion for Summary Judgment, finding no evidence of affirmative negligence and that Debtor was not entitled to a tax refund).

current bankruptcy case, the United States filed a Satisfaction of Judgment and Release of Lien (the "Release and Satisfaction") in the Gastech Litigation.[25]   The Release and Satisfaction was not served on Debtor.  The Release and Satisfaction states:

> The judgment entered March 7, 2001, in the above-entitled case against Gastech Engineering Corporation and in favor of the United States [i.e., the Gastech Judgment] in the amount of $309,112.64, has been satisfied.  The Clerk of the United States District Court for the Northern District of Oklahoma, is hereby authorized and empowered to mark as satisfied and cancel said judgment.

> Accordingly, pursuant to Section 3201(d), Title 28, U.S.C., the lien created when a certified copy of the abstract of judgment was filed in the Recorder's Office for Tulsa County, OK as Document Number 01038403, 6506/0456-0456 has been satisfied and is hereby released.[26]

The Release and Satisfaction narrowly addressed the liability of Gastech to the IRS pursuant to the Gastech Judgment and the release of the IRS's judgment lien created thereby.  It did not address whether the Gastech Invoices remain subject to levy by the IRS; nor did it address whether a tax lien remains in place against property of Debtor.

On October 15, 2008, the IRS filed an amended proof of claim in this case (the "Amended Claim").[27]   The Amended Claim reflects the resolution of two adversary proceedings between Debtor and the IRS, as well as the settlement of other issues between the parties.[28]   A single issue remains:  Debtor asserts that it has a right to setoff against the Amended Claim based on the mishandling of the Release and Satisfaction by the IRS.  On November 5, 2008, a telephonic hearing

---

[25]  Satisfaction of Judgment and Release of Lien, *in* Stipulated Facts, Exhibit "G", *Docket No. 221-7.*

[26]  *Id*. (bracketed material added).

[27]  *Claim No. 7-8.*

[28]  *See* Adv. Proc. Nos. 06-01237-M and 06-01238-M.

was held in which both parties participated.  The parties agreed to submit stipulated facts and briefs to the Court regarding the threshold issue of the ability of Debtor to seek a setoff against the Amended Claim.  If Debtor is not entitled to a setoff, the litigation ends, and the Amended Claim will be allowed as filed.

### Positions of the Parties

The sole issue before the Court is the effect on the Debtor's estate, if any, of the decision by the IRS to file the Release and Satisfaction in the Gastech Litigation, and whether Debtor is entitled to seek a setoff against the IRS's claim as a result of that decision.

*1. Debtor's Arguments*

At the heart of Debtor's objection is the assertion that the right to collect under the Gastech Judgment constitutes property of the Debtor's estate.[29]  In support of this assertion, Debtor relies on four propositions:  1) property of the Debtor that was seized pre-petition but had not been disposed of on the petition date is property of the estate; 2) the IRS exercised control over property of the estate post-petition in violation of § 362(a)(3), and failed to deliver property of the estate in violation of § 342(a)[sic];[30] 3) the right to collect the Gastech Invoices[31] merged into the Gastech Judgment; and 4) satisfaction of the Gastech Judgment released Gastech from further obligation to pay the

---

[29] *See* Memorandum Brief of Debtor-in-Possession, on the Significance of the IRS's Release of its Judgment Against Gastech Engineering, Inc., *Docket No. 235* at 4 ("Debtor's Brief") ("The IRS' pre-petition possession of PPFI's property, *i.e.*, the Gastech Judgment, . . ."). *See also* Debtor-in Possession's Reply Brief on the Significance of the IRS's Release of its Judgment Against Gastech Engineering, Inc., *Docket No. 239.*

[30] Debtor's Brief, *Docket No. 235* at 10.  Section 342(a) deals with notice of the order for relief under Title 11.  The Court must assume that Debtor intended to refer to § 362(a).

[31] Debtor's Brief refers to the Gastech Receivables, but appears to reference the Gastech Invoices, as they were defined in the Stipulated Facts, *Docket No. 221.*

Gastech Invoices.[32]  Based on these propositions, Debtor concludes that when the IRS filed the Release and Satisfaction, it had the effect of destroying or disposing of Debtor's property.  Debtor argues that the IRS should not have filed the Release and Satisfaction in the Gastech Litigation, but instead should have "preserve[d] the value of the Gastech Judgment by assigning it to [Debtor]" or should have "attempt[ed] to preserve the value of the Gastech Judgment by giving Gastech permission to pay the remainder of its obligation to [Debtor]."[33]  As a remedy, Debtor believes it is "entitled to credit for the entire unpaid portion of the original Gas[t]ech Judgment, plus interest," or in the alternative, "it is entitled to credit against its tax obligations in the amount remaining due under the Settlement Agreement at the time the Judgment was released" plus interest.[34]

*2.  IRS Arguments*

The IRS takes the position that Debtor does not have a valid basis for a setoff claim.[35]  The IRS argues that Debtor never had a property right in the Gastech Judgment, so entry of the Release and Satisfaction could not have disposed of Debtor's rights.  Neither the levies, the Gastech Judgment, nor the Settlement Agreement affected or hindered Debtor's rights in the Gastech Invoices, such that Debtor has always been, and remains, free to proceed against the Gastech Invoices.  Because the Gastech Judgment was a personal judgment in favor of the United States, the IRS argues that it was enforceable only to the extent that the taxes underlying the levies remained

---

[32]  Debtor's Brief, *Docket No. 235*.

[33]  *Id.* at 4.

[34]  Debtor's Second Amended Objection to Claim of the Department of the Treasury–Internal Revenue Service, Claim No. 7, as Amended, *Docket No. 196* at 5–6

[35]  *See* Brief in Support of United States' Response to Debtor's Second Amended Objection to Claim, *Docket No. 233*; United States' Response to Debtor's Brief, *Docket No. 238*.

unpaid; once the tax liabilities were satisfied and no longer subject to a refund claim, the IRS was required to release the levies and file a satisfaction of the Gastech Judgment.

### Conclusions of Law[36]

The parties focus their argument on the effect of the Release and Satisfaction on the property of Debtor's estate and the IRS's tax claim.  At the core of this dispute is a fundamental disagreement regarding the nature and ownership of the Gastech Judgment and subsequent Settlement Agreement, and what effect they had on the parties' various rights and obligations.  Did the Gastech Litigation simply involve a personal judgment against Gastech for failure to honor an administrative levy, such that Debtor's rights in the Gastech Invoices were unaffected, as the IRS proposes; or did the Gastech Litigation serve to adjudicate and finally determine the rights of all parties, including Debtor, in the Gastech Invoices, such that Debtor is foreclosed from further process against Gastech on those receivables?  Only after we understand the Gastech Judgment can its release be put into proper context.

This litigation is essentially a continuation of the Overpayment Litigation, in which the District Court ultimately ruled that Debtor was not entitled to a refund for overpayment of taxes. Neither party has argued that it should not be bound by the findings and conclusions generated in that litigation.  Although much of this ground was covered in the four opinions entered in the Overpayment Litigation,[37] some review of the law regarding tax liens and the rights of the parties involved is needed.

---

[36] To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

[37] *See supra* notes 20, 22–24.

*1. Applicable Law*

When a taxpayer fails to remit the full amount of taxes owed, a statutory lien in favor of the government is established against "all property and rights to property, whether real or personal, belonging to [the taxpayer]."[38]  This lien arises at the time the assessment is made, and continues until the taxpayer's liability is satisfied or becomes unenforceable by lapse of time.[39]  Once an assessment of the delinquent tax is made, the IRS has several options at its disposal to proceed with collection of the tax.  The United States Supreme Court has described these options as follows:

> A federal tax lien, however, is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes. The Internal Revenue Code provides two principal tools for that purpose. The ***first*** is the lien-foreclosure suit. Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The suit is a plenary action in which the court "shall ... adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." The ***second*** tool is the collection of the unpaid tax by administrative levy. The levy is a provisional remedy and typically "does not require any judicial intervention." The governing statute is § 6331(a).  It authorizes collection of the tax by levy which, by § 6331(b), "includes the power of distraint and seizure by any means."
>
> In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to § 6332(a). This notice gives the IRS the right to all property levied upon and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. If the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal.

---

[38]  I.R.C. § 6321. *See also Process Pipe*, Case No. 04-CV-00869-CVE-SAJ, 2006 WL 2708609, at *3 (N.D. Okla. Sept. 20, 2006).

[39]  I.R.C. § 6322; *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719 (1985).

The administrative levy has been aptly described as a "provisional remedy." In contrast to the lien-foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved. "The underlying principle" justifying the administrative levy is "the need of the government promptly to secure its revenues." "Indeed, one may readily acknowledge that the existence of the levy power is an essential part of our self-assessment tax system," for it "enhances voluntary compliance in the collection of taxes." "Among the advantages of administrative levy is that it is quick and relatively inexpensive."[40]

The Court clearly distinguishes between a lien-foreclosure suit under I.R.C. § 7403, which involves a final determination of all claims to and liens upon the subject property, and an administrative levy authorized under I.R.C. § 6331.

In a decision dated September 20, 2006, the District Court summarized the IRS's use of an administrative levy as follows:

The IRS has broad powers to collect unpaid taxes, which includes the power to serve a notice of levy against property owned by the taxpayer. *United States v. National Bank of Commerce*, 472 U.S. 713, 720-21 (1985). "This notice gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *Id.* at 721. The IRS initiates an administrative levy by serving a notice of levy on the person holding the subject property. 26 U.S.C. § 6331. By filing a notice of levy, the IRS acquires the authority to dispose of the property to satisfy any tax deficiency. *Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1221 (10th Cir.1998). Once the notice of levy is served, the IRS "steps into the shoes of the taxpayer and acquires 'whatever' rights to the property the taxpayer possessed." *Id.* (quoting *United States v. Bell Credit Union*, 860 F.2d 365, 369 (10th Cir.1988)). A notice of levy, without more, does not transfer ownership of the property to the IRS. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209-210 (1983).[41]

---

[40] *Nat'l Bank of Commerce*, 472 U.S. at 720–21 (emphasis added) (citations omitted). Note that former I.R.C. § 6332(c) has been redesignated as I.R.C. § 6332(d). Pub. L. No. 100-647, § 6236(e)(1) (1988).

[41] *Process Pipe*, 2006 WL 2708609, at *3.

13

Courts have found that the rule announced in *United States v. Whiting Pools, Inc.*[42]—that a notice of levy does not, without more, transfer ownership to the IRS—applies equally to tangible and intangible property, such as an account receivable.[43]  "[A]bsent a foreclosure or similar action the taxpayer still retains ownership of the property."[44]

Upon receipt of a notice of levy, a party is obligated to surrender property of the taxpayer to the IRS pursuant to I.R.C. § 6332(a).[45]  As the District Court made clear, the IRS has considerable discretion regarding when and how, or even whether, to dispose of seized assets and to enforce its levies.[46]  The IRS is under no duty to sell the property immediately, but is instead allowed to use

---

[42]  462 U.S. 198, 209-210 (1983).

[43]  *See Challenge Air Int'l, Inc. v. United States (In re Challenge Air Int'l, Inc.)*, 952 F. 2d 384, 386–87 (11th Cir. 1992); *Stead v. United States*, 419 F.3d 944, 948 (9th Cir. 2005) (affirmative negligence in collection of account necessary to shift risk of loss from taxpayer to IRS).  *See also Process Pipe*, 2006 WL 2708609, at *5 (finding that, without more, levy did not transfer ownership of the Gastech Invoices to the IRS and that the rule in *Stead* would apply to this case); *Process Pipe*, 2007 WL 1731765, at *16 (holding that IRS did not commit affirmative acts of negligence that would transfer risk of loss from Debtor).

[44]  *United States v. Triangle Oil*, 277 F.3d 1251, 1256 (10th Cir. 2002).  *See also Process Pipe*, 2006 WL 2708609, at *5 ("A levy does not transfer ownership of property to the IRS unless it sells the property in a tax sale or disposes of the asset in some other way.").

[45]  I.R.C. § 6332(a) states

(a) Requirement
Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

I.R.C. § 6332(a).

[46]  *See Process Pipe*, 2007 WL 1731765, at *14.  *See also Stead*, 419 F.3d at 948; *Cash v. United States*, 961 F.2d 562, 567 (5th Cir. 1992).

14

its discretion to establish a payment plan in order to maximize the value of the asset.[47]  To the extent

a taxpayer is unhappy with the IRS's efforts at collection, it has the right to pay its underlying tax

obligation and request a return of the levied assets.[48]

Where the property levied upon is an account receivable, the taxpayer is considered the

owner of the account, while the account obligor is considered to be "in possession of" the property.[49]

When a party subject to an administrative levy under I.R.C. § 6331 refuses to honor the levy and

turn over a taxpayer's property, the IRS may, in its discretion, use the tools available under I.R.C.

§ 6332(d) to enforce the levy.[50]  An action under I.R.C. § 6332(d)(1) seeks to establish *personal*

_____

[47]  *Cash*, 961 F.2d at 567; *Process Pipe*, 2006 WL 2708609, at *5.

[48]  *Process Pipe*, 2006 WL 2708609, at *4 (citing *Cash*, 961 F.2d at 569).  *See also* 26 C.F.R. § 301.6343-1(a).

[49]  *See* I.R.C. § 6332(a).

[50]  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 721 (1985) (refers to I.R.C. § 6332(c), which has been redesignated as I.R.C. § 6332(d) by Pub. L. No. 100-647, § 6236(e)(1) (1988)).  I.R.C. § 6332(d) states:

> (d) Enforcement of levy
>> (1) Extent of personal liability
>> Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.
>
>> (2) Penalty for violation
>> In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to

*liability* for failure to honor a levy.  A judgment under that section establishes liability for the value of property not surrendered, but not liability for the tax itself.[51]  A judgment also creates a lien of a judgment creditor under 28 U.S.C.A. § 3201, but not a tax lien.[52]  In order to prevail in the suit, the IRS may need to prove that the holder of the property is liable to the taxpayer, such as in the Gastech Litigation,[53] but the action does not generally delineate the rights of all parties to the property, in contrast with a lien-foreclosure suit.[54]  While I.R.C. § 6332(a) requires turnover to the IRS, the account obligor is protected from exposure to double liability by operation of I.R.C.

> surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

I.R.C. § 6332(d).

[51]  *See Law Offices of Jonathan A. Stein v. Cadle Co.*, 250 F.3d 716, 720 (9th Cir. 2001); *United States v. Henshaw*, 388 F.3d 738, 743 (10th Cir. 2004).

[52]  *See Law Offices of Jonathan A. Stein*, 250 F.3d at 720; 28 U.S.C.A. § 3201.

[53]  *See Nat'l Bank of Commerce*, 472 U.S. at 721–22 (Only two defenses exist for failure to comply with a levy: 1) the entity is not in possession of or not obligated with respect to the property; or 2) the property is subject to a prior judicial attachment or execution.).

[54]  The United States Supreme Court summarized this principle as follows:

> Crucially, the administrative levy, as has been noted, is only a provisional remedy. "The final judgment in [a levy] action settles no rights in the property subject to seizure." Other claimants, if they have rights, may assert them. Congress recognized this when the Code's summary-collection procedures were enacted and when it provided in [I.R.C.] § 7426 of the Code that one claiming an interest in property seized for another's taxes may bring a civil action against the United States to have the property or the proceeds of its sale returned. Congress also has provided, by [I.R.C.] § 6343(b), an effective and inexpensive administrative remedy for the return of the property.

*Id*. at 728 (first bracketed text in original) (footnotes and citations omitted).

16

§ 6332(e).[55]  To the extent that a party surrenders a taxpayer's property to the IRS pursuant to an administrative levy, e.g., makes payments on a levied account receivable—including payment of a liability under I.R.C. § 6332(d)(1)—it is discharged from paying the same obligation to the taxpayer.[56]

Once a taxpayer's tax obligation has been fully satisfied, the IRS must take action to release any levy issued under I.R.C. § 6331.[57]  If a taxpayer believes that grounds exist, it may submit a

---

[55]  I.R.C. § 6332(e) states:

(e) Effect of honoring levy
Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (*or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.*

I.R.C. § 6332(e) (emphasis added).

[56]  *Id.  See also Cash*, 961 F.2d at 569 ("In the ordinary case, the IRS need only ensure that the taxpayer is credited with the amount actually collected on the accounts."); *Stead*, 419 F.3d at 948 ("[T]he [Internal Revenue] Code accords with the reasoning that the government need not credit an amount levied upon against a taxpayer's liability until the government actually collects on the account.") (citing I.R.C. §§ 6342, 6343(a)(1)(A)).

[57]  I.R.C. § 6343(a)(1)(A).  That section states

(a) Release of levy and notice of release
    (1) In general
    Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—
        (A) *the liability for which such levy was made is satisfied* or becomes unenforceable by reason of lapse of time, . . . .

*Id.* (emphasis added).

17

request to the IRS to release a levy.[58]  Once an administrative levy is released, the possessor, i.e.,

the account obligor, is relieved of any further obligation to surrender the property to the IRS.[59]  Only

that portion of the account receivable that was actually surrendered to the IRS, whether pursuant to

the levy or I.R.C. § 6332(d)(1), is deemed discharged.[60]  Because ownership of the account at all

times remains with the taxpayer, release of an administrative levy will not further affect the relative

rights to the property as between the taxpayer and the account obligor.  To the extent property comes

into the actual possession of the IRS in excess of the underlying assessed liability, upon release of

the levy it will be returned to the person legally entitled to the property.[61]

*2.  The Gastech Judgment and its Effect on Debtor's Rights in the Gastech Invoices*

        In the present case, Debtor failed to remit taxes owed.  Upon assessment of the tax, a

statutory lien was created pursuant to I.R.C. § 6321 on all property of Debtor, including the Gastech

Invoices.  Using its authority under I.R.C. § 6331(a), the IRS served notices of levy on Gastech, as

---

[58]  26 C.F.R. § 301.6343-1(a).

[59]  26 C.F.R. § 301.6343-1(e).  That regulation states:

(e) Effect of a release of levy.  *If property has not yet been surrendered to the director in response to a levy, a release of the levy under section 6343(a) will relieve the possessor of any obligation to surrender the property.*  Otherwise, a release of a levy under section 6343(a) will cause the property to be returned to the custody of the person or persons legally entitled thereto. The release of a levy on any property under this section does not prevent any subsequent levy on the property. Section 301.6343–2, dealing with return of wrongfully levied upon property, is subject to section 6402 which prohibits the Internal Revenue Service from refunding a payment of money that has been deposited in the Treasury and credited to the taxpayer's liability unless there is an overpayment.

*Id.* (emphasis added).

[60]  I.R.C. § 6332(e).  *See Cash*, 961 F.2d at 569; *Stead*, 419 F.3d at 948.

[61]  26 C.F.R. § 301.6343-1(e).

the holder of property of Debtor.  At the time of the levies, the face value of the Gastech Invoices

was over $256,000.  Upon receipt of the administrative levies, Gastech was obligated under I.R.C.

§ 6332(a) to surrender the amount due on the Gastech Invoices to the IRS.  The service of levies

upon Gastech did not operate to transfer ownership of the Gastech Invoices to the IRS; the rights

to payment from Gastech remained property of Debtor, subject to the IRS's statutory tax lien.[62]  To

the extent Gastech honored the administrative levies and transferred funds to the IRS, Gastech was

discharged for that amount on its obligation to Debtor.[63]

Unsatisfied with Gastech's compliance with the levies, the IRS filed the Gastech Litigation

with the goal of holding Gastech personally liable under I.R.C. § 6332(d)(1) for failure to honor the

levies on the Gastech Invoices.  Although the Amended Complaint in that action makes a single

mention of I.R.C. § 7403, the remainder of the complaint makes it clear that the action was not a

lien-foreclosure suit and was limited to an action under I.R.C. § 6332(d)(1).[64]  The Order in the

Gastech Litigation addressed the narrow issue of whether Gastech was liable to Debtor, and thus

whether Gastech failed to surrender property of Debtor to the IRS.[65]  The Gastech Judgment

specifically recites that the action was brought pursuant to I.R.C. §§ 6332(d)(1) and 7402(a).[66]  The

Settlement Agreement, which settled "all matters" between the IRS and Gastech, made the Gastech

---

[62]  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209–10 (1983); *United States v. Triangle Oil*, 277 F.3d 1251, 1256 (10th Cir. 2002).

[63]  I.R.C. § 6332(e).  *See also Triangle Oil*, 277 F.3d at 1259 (account obligor entitled to protection of I.R.C. § 6332(e) only in relation to its honoring of the federal tax levies).

[64]  Amended Complaint, *in* Stipulated Facts, Exhibit "B", *Docket No. 221-2* at 5.

[65]  Order, *in* Stipulated Facts, Exhibit "C", *Docket No. 221-3* at 2.

[66]  Judgment, *in* Stipulated Facts, Exhibit "D", *Docket No. 221-4*.  I.R.C. § 7402(a) gives district courts of the United States jurisdiction over such an action.

Judgment final and non-appealable, gave the IRS a judgment lien against Gastech, and made Gastech personally liable for the full amount of the Gastech Judgment, but it also recited that the IRS would accept $167,000 plus interest in full satisfaction of that liability.[67]

The effect of the Gastech Judgment was to establish the personal liability of Gastech to the IRS for failure to honor the levies on the Gastech Invoices.[68]  Payments made to the IRS pursuant to the Gastech Judgment and Settlement Agreement were to be applied to Debtor's tax liabilities under the Assessment.[69]  Under the payment plan established by the Settlement Agreement, Gastech's *personal liability to the IRS for failure to honor the levies* would be satisfied.  Neither the Gastech Judgment nor the Settlement Agreement did anything to transfer the ownership of the Gastech Invoices to the IRS, or to otherwise alter the rights of the parties in those accounts.[70]

Contrary to the assertion of Debtor, neither the Gastech Judgment nor the Settlement Agreement had the effect of reducing or replacing Gastech's obligation to Debtor under the Gastech Invoices—they simply established the amount that would satisfy Gastech's personal liability to the IRS.  Absent some affirmative negligence by the IRS in its collection efforts, no risk of loss shifted

---

[67] Terms of Settlement, *in* Stipulated Facts, Exhibit "E", *Docket No. 221-5*.

[68] I.R.C. § 6332(d)(1).  *See, e.g., Law Offices of Jonathan A. Stein v. Cadle Co.*, 250 F.3d 716 (9th Cir. 2001).  The court in that case found that a judgment under I.R.C. § 6332(d)(1) was not for failure to pay a tax; "[o]ne simply becomes liable for the separate wrongdoing of failure to honor a levy." *Id.* at 720.  The court found that the judgment debtor was not liable for the tax, but was instead liable for the value of the property it failed to turn over.

[69] I.R.C. § 6332(d)(1).

[70] *See Process Pipe*, Case No. 04-CV-00869-CVE-SAJ, 2006 WL 2708609, at *5 (N.D. Okla. Sept. 20, 2006).

to the IRS.[71]   The District Court specifically found that the settlement reached with Gastech was reasonable and that the IRS did not commit affirmative acts of negligence in its efforts to collect on the Gastech Invoices.[72]   As the District Court noted, if Debtor was "unhappy with the IRS' collection efforts, the [Debtor] [had] the right to pay the tax deficiency in order to redeem the account and [] attempt to collect the account on [its] own."[73]

Notably, the *liability* at issue in the Settlement Agreement was the *personal liability* of Gastech for failure to honor the IRS levies.   The Settlement Agreement gave the IRS a judicial lien on property of Gastech, as set forth in 28 U.S.C.A. § 3201.   The effect of this lien was to establish the priority of the IRS relative to other creditors of Gastech.   But nothing in either the Gastech Judgment or the Settlement Agreement changed the liability of Gastech to Debtor on the underlying accounts, except that under I.R.C. § 6332(e), to the extent Gastech made payments to the IRS, it would be discharged from paying the same over to Debtor.

In *In re Wolensky's L.P.*,[74] the court addressed whether seized accounts receivable belonging to a debtor/taxpayer were property of the estate or the IRS.   In that case, the IRS had levied on insurance proceeds owed to the debtor prior to the filing of the debtor's bankruptcy petition.   The court found that nothing in the Internal Revenue Code operated to transfer ownership of the levied

---

[71]  *Process Pipe*, 2007 WL 1731765, at *13 (applying the rule in *Stead v. United States*, 419 F.3d 944, 947–48 (9th Cir. 2005) to this case).

[72]  *Process Pipe*, 2007 WL 1731765, at *16.

[73]  *Process Pipe*, 2006 WL 2708609, at *4.  *See also Cash v. United States*, 961 F.2d 562, 569 (5th Cir. 1992) (citing  I.R.C. § 6337(a)).

[74]  *Fed. Kemper Life Assurance Co. v. Wolensky's L.P. (In re Wolensky's L.P.)*, 163 B.R. 629 (Bankr. D.D.C. 1994).

accounts to the IRS in the absence of a sale of the seized asset or payment on the obligation.[75]  In

fact, the court noted, nothing prevented the debtor from pursuing the accounts even after the levy.[76]

The obligation to the debtor remained wholly intact, subject only to a superior right of the IRS in

the levied funds.  Only a surrender of the property to the IRS, in that case the insurance proceeds,

would be sufficient to extinguish the liability to the debtor.[77]

 Addressing the rights of the debtor/taxpayer in a Chapter 11 context, the court in *In re

Wolensky's L.P.* reasoned that

> [courts that held a taxpayer had no right to sue on an account after levy] appear to
> confuse the government's superior collection rights with the question of whether the
> debtor's equitable interest is terminated. A levy gives the IRS a superior right, as
> against the taxpayer, in any fund or account receivable levied upon. But that superior
> right does not terminate the taxpayer's equitable interest in the property. At most, for
> various obvious practical reasons, it may usually *defeat* the taxpayer's ability to
> enjoy the fruits of that right. With the intervention of a chapter 11 bankruptcy case
> under chapter 11 of the Bankruptcy Code the trustee (or a debtor-in-possession) has
> a basis for enjoying that right and employing the proceeds in the debtor's business
> by providing the government's lien adequate protection (for example, by posting
> replacement collateral).[78]

In the absence of a tax sale under I.R.C. § 6335, a lien-foreclosure under I.R.C. § 7403, or other

similar action, the Gastech Invoices have at all relevant times remained property of Debtor and/or

Debtor's estate.[79]  At all times after the IRS seized the Gastech Invoices, Debtor has maintained a

---

[75] *Id.* at 635

[76] *Id.* at 635–36.

[77] *Id.* at 636 ("[U]ntil those proceeds were turned over by [the account obligor] to the IRS,
the levy did not transfer ownership of those proceeds to the IRS.  Accordingly, the proceeds are
properly viewed as property of the estate pursuant to 11 U.S.C. § 541.").

[78] *Id.*

[79] § 541(a)(1); *United States v. Triangle Oil*, 277 F.3d 1251, 1256–57 (10th Cir. 2002).

right to collect on those accounts that was co-extensive with the IRS.[80]  As the court in *In re Wolensky's L.P.* makes clear, Debtor was never foreclosed from taking steps to collect the Gastech Invoices—with the caveat that the IRS had a superior right to any funds collected.  Debtor could have—but did not—request that the seized invoices be returned.[81]

Any funds received by the IRS prior to the filing of this bankruptcy case became property of the IRS and were credited toward Debtor's tax liabilities pursuant to IRS rules.[82]  In its first proposition, Debtor asserts that any funds received by the IRS after the petition date, as well as funds still owing to Debtor under the Gastech Invoices that remain in the hands of Gastech, are property of Debtor's bankruptcy estate.  This Court agrees, although both types of property may be subject to judgment and/or tax liens of the IRS.

Debtor's second argument is that the IRS exercised control over property of the estate in violation of § 362(a)(3) when it failed to release the levies on the Gastech Invoices.  The Court agrees that the unpaid portion of the Gastech Invoices became property of Debtor's estate on the petition date, and that the IRS had (and according to the record before the Court, still has) administrative levies on that property under I.R.C. § 6331.  Debtor argues that upon its payment in full of the tax liability covered in the Assessment, the IRS should have released those levies.  Debtor correctly states that the IRS is required to release a levy on property when "the liability for which

---

[80]  *See Triangle Oil*, 277 F.3d at 1256–57.

[81]  *See* 26 C.F.R. § 301.6343-1(a).  *See also Process Pipe*, 2007 WL 1731765, at *15.

[82]  *See In re Wolensky's L.P.*, 163 B.R. at 635 ("Significantly, the IRS must still collect on the levy by way of sale of the asset seized or by way of receipt of payment of the obligation seized before ownership can be said to have transferred.").

such levy was made is satisfied or becomes unenforceable by reason of lapse of time."[83]  Debtor argues that it paid its tax liability that was the subject of the Assessment in full as of November 10, 2004, and therefore the IRS should have immediately released the levies on the Gastech Invoices. What Debtor neglects to add is that on November 10, 2004, it filed six claims for refund for periods covered by the Assessment.  Immediately after denial of those requests, Debtor initiated the Overpayment Litigation alleging overpayment and seeking a refund of amounts paid under the Assessment.  As a result, the IRS chose to maintain the status quo by keeping the levies intact until the District Court could finally determine whether the IRS had properly credited Debtor's account.

After Debtor filed this bankruptcy case, while the levies may have given the IRS some rights vis á vis third parties, they did nothing to affect the relative rights of Debtor and the IRS in the Gastech Invoices.[84]  The failure of the IRS to immediately release the levies did not prevent Debtor from acting to collect the Gastech Invoices, subject to proper allocation of the proceeds according to the priority system under the Bankruptcy Code.  Debtor cites no cases for the proposition that failure to release a levy on property of the estate is a violation of the automatic stay.  As noted by the District Court, Debtor had a right under I.R.C. § 6343 to request that the levies be released, but no evidence has been presented to this Court that such a request was ever made.[85]  Therefore, the

---

[83]  I.R.C. § 6343(a)(1)(A).

[84]  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 721 (1985) ("In contrast to the lien-foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved.").  *See also* Kevin W. Coleman, *Pre-Petition IRS Levies on "Cash Equivalents": Why they are Recoverable by the Estate even Absent a Present Right to Collect*, 100 Comm. L.J. 471, 488 (1995) ("[T]he Supreme Court repeatedly states that a levy does not determine the rights of the taxpayer, the IRS, or third parties in the levied-upon property.").

[85]  *See Process Pipe*, 2007 WL 1731765, at *15; 26 C.F.R. § 301.6343-1(a, c).

Court finds that failure to release the levies on the Gastech Invoices while awaiting a ruling in the Overpayment Litigation was not an impermissible exercise of control over property of Debtor's estate.

Third, Debtor makes an elaborate argument that Gastech's liability to Debtor embodied in the Gastech Invoices merged into the Gastech Judgment.[86] From this, it draws two conclusions: 1) that the Gastech Judgment operated to extinguish Gastech's remaining contractual obligation to Debtor, and turned that obligation into a money judgment in favor of the IRS; and 2) that the Gastech Judgment, and all of the rights of the IRS thereunder, are now property of Debtor's estate.[87] The Court is not persuaded.

As a first observation, the Court notes that the terminology of "merger" and "bar" has been superseded by the term "res judicata."[88] That term collectively describes the preclusive effect of a judgment under the doctrines of claim preclusion and issue preclusion.[89] The Supreme Court of the United States recently summarized these doctrines as follows:

> Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.*, at 748-749, 121 S.Ct. 1808. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing

---

[86] Debtor's Brief, *Docket No. 235* at 11–15.

[87] *Id.* at 2.

[88] *See Taylor v. Sturgell*, 553 U.S. __, 123 S.Ct. 2161, 2171 n.5 (2008).

[89] *Id.* at 2171.

the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).[90]

The preclusive effect of the Gastech Judgment is determined by federal common law.[91]  The Debtor appears to be asking the Court to find that *if and when* it acts to enforce the Gastech Invoices in state court, Debtor will be precluded from doing so by reason of the Gastech Judgment.  Such a finding would involve facts and parties that are not currently before this Court.  Any statement made by this Court involving Debtor's rights in theoretical future litigation would be advisory. Moreover, the Court finds Debtor's fears to be unfounded, and declines to make any finding regarding the preclusive effect of the Gastech Judgment.[92]

Although the Court will not make a statement regarding the preclusive effect of the Gastech Judgment in future litigation, it will address Debtor's other concerns.  Contrary to Debtor's assertions, Gastech was not discharged from its obligations under the Gastech Invoices by operation of either the Gastech Judgment or the Settlement Agreement.  As I.R.C. § 6332(e) makes clear, only the actual surrender of property to the IRS—here, actual payments made by Gastech to the IRS—operated to discharge Gastech from its obligations to Debtor.  Under I.R.C. § 6332(e),

---

[90]  *Id.*

[91]  *Id.  See also Hoxworth v. Blinder*, 74 F.3d 205, 208 (10th Cir. 1996) ("Generally, court-approved settlements receive the same res judicata effect as litigated judgments.").

[92]  The Court notes that "[u]nder Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) (quoting *MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)).  Debtor's preclusion argument confuses Debtor's state law rights to bring a suit based on breach of contract against Gastech for failure to pay the Gastech Invoices with the IRS's right to sue Gastech for failure to honor its levies.  Debtor acknowledges that the causes of action differ, but asserts that the two claims are so closely related that they are to be considered the same for purposes of claim preclusion. *See* Debtor's Brief, *Docket No. 235* at 12.

payments made by Gastech to the IRS—whether surrendered pursuant to the levy under I.R.C. § 6332(a) or surrendered under the terms of the Settlement Agreement under I.R.C. § 6332(d)(1)—operated to discharge Gastech from paying that same amount over to Debtor.  To the extent Gastech has not turned funds over to the IRS, the Gastech Invoices remain property of Debtor's estate in the hands of Gastech.[93]

Debtor also incorrectly construes the rights to payment under the Gastech Judgment as being property of Debtor's estate.  The Gastech Judgment resulted in a judgment lien under 28 U.S.C.A. § 3201 that established the priority of the IRS relative to Gastech's other creditors.  Although Debtor strenuously argues that it should be allowed to step into the shoes of the IRS in that priority scheme, it provides no authority for such a result.  The Internal Revenue Code provides a detailed framework regarding how the IRS is to collect property held in the hands of a third party, but Debtor has not pointed to any rule that would allow the IRS to transfer its rights under a judicial lien to a taxpayer upon satisfaction of the underlying tax liability.

Debtor cites the case of *Rosenheck & Co. v. United States*[94] as support for its final proposition that the Gastech Invoices have merged with the Gastech Judgment and therefore are no longer enforceable.  In that case, Rosenheck & Co. ("Rosenheck"), a company holding property subject to a tax levy, was threatened with a lawsuit by the taxpayer if it complied with the levy and turned the property over to the IRS.  In order to avoid double liability, Rosenheck filed an interpleader action against both the IRS and the taxpayer.  The court found that the interpleader action was improper because the IRS and the taxpayer did not have adverse claims to the property

---

[93]  Subject, of course, to a successful collection action by Debtor against Gastech.

[94]  Case No. 97-CV-0028-B, 1997 WL 460259 (N.D. Okla. April 9, 1997).

held by Rosenheck.  The court assured Rosenheck that I.R.C. § 6332(e) would provide it with immunity from liability to the delinquent taxpayer and any other person for complying with an IRS levy.[95]

This Court has no reason to disagree with the statement of law or the result in *Rosenheck & Co*.  The court in that case was clear to state that it was the *statute*—specifically I.R.C. § 6332(e)—that provided immunity to Rosenheck from any later suit by the delinquent taxpayer if it surrendered levied property to the IRS.  The case did not involve any lawsuit or judgment by the IRS against Rosenheck.  The Court reads *Rosenheck & Co.* to confirm that Gastech will not face multiple liability on the Gastech Invoices, and that Gastech has been discharged from liability to Debtor for any amount actually turned over to the IRS—whether pursuant to the levy or the Settlement Agreement.  But the Court does not find support in *Rosenheck & Co.* for Debtor's conclusion that the Gastech Invoices merged into the Gastech Judgment.

The Court concludes that the Gastech Judgment was nothing more than a permissible tool used by the IRS in its effort to collect property of Debtor from Gastech.  The Settlement Agreement had the effect of establishing the personal liability of Gastech for the entire amount of the Gastech Judgment, subject to release upon payment under the proposed schedule.  It created a judicial lien on property of Gastech, which was also subject to release upon payment under the Settlement Agreement.  To the extent it made payments to the IRS under the levy and/or the Settlement Agreement—and only to that extent—Gastech was discharged from further liability to Debtor on the Gastech Invoices.  Under this framework, the Court has no basis to find that the Gastech Judgment (or its later settlement) operated to adjudicate the rights of Debtor in the Gastech Invoices

---

[95] *Id.* at *3 (citing I.R.C. § 6332(e)).

in a way that would preclude it from further collection on those receivables.

*3. The Release and Satisfaction and its Effect on Property of Debtor's Estate*

A review of the Release and Satisfaction suggests that it did not have the sweeping effect that Debtor attributes to it.  It simply released the judgment lien against Gastech that was created under 28 U.S.C.A. § 3201 upon entry of the Gastech Judgment.  Notably, it did not operate to release the levies on the Gastech Invoices under I.R.C. § 6343.  Nor does it release the statutory tax lien against Debtor's property under I.R.C. § 6325.

Debtor strenuously argues that by filing the Release and Satisfaction, the IRS has destroyed a valuable asset of Debtor's estate.  Debtor's basis for this argument—that the Gastech Judgment is  property of Debtor's bankruptcy estate—has already been rejected.  The only relevant property of the estate that has been identified in this Memorandum Opinion are any unpaid amounts owing to Debtor under the Gastech Invoices that remain in the hands of Gastech.[96]  Contrary to Debtor's assertion, the entry of the Release and Satisfaction did not affect Gastech's remaining obligation under the Gastech Invoices.  Its entry simply means that Gastech is no longer personally liable to the IRS for the value of Debtor's property that it fails to surrender.

Once Debtor's tax liability related to the Assessment was paid in full and was no longer the subject of litigation, the IRS no longer had any authority to collect Debtor's property from Gastech under the Gastech Judgment. As the IRS correctly points out, the purpose of I.R.C. § 6332(d)(1) is to promote collection of the underlying tax liability; that section does not serve to penalize a non-compliant party absent a finding under I.R.C. § 6332(d)(2).  Once the tax liability related to the

---

[96] As noted *supra*, funds received from Gastech by the IRS post-petition are also property of Debtor's estate, but are not the subject of this Memorandum Opinion.

Assessment had been satisfied, the release of the lien created by the Gastech Judgment was appropriate.[97] Whether Gastech has any remaining liability to Debtor under the Gastech Invoices may be the subject of future litigation between those parties, but nothing about the decision of the IRS to release its judgment lien and indicate that the Gastech Judgment has been satisfied will affect the rights of those parties.

### Conclusion

To the extent Gastech made payments under either the administrative levies on the Gastech Invoices or under the Gastech Judgment and Settlement Agreement, it will not be exposed to double liability to Debtor for those amounts.  Any remaining obligation of Gastech to Debtor under the Gastech Invoices remains property of Debtor's bankruptcy estate.  To the extent Debtor wishes to pursue collection of that property, it may do so.[98] But Debtor is not entitled to any setoff against its tax obligation to the IRS for any amounts related to the Gastech Judgment, the Settlement Agreement, or the entry of the Release and Satisfaction.  Debtor's objection on that basis is overruled.  The Amended Claim is allowed as filed.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5474.8

---

[97]  Debtor does not argue that the IRS delayed in filing the Release and Satisfaction.

[98]   The Court makes no finding about whether the Gastech Invoices remain subject to additional tax liens or levies.